# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **EMP Shield, LLC**<br>210 Tecumseh<br>Ottawa, KS 66067,<br><br>     Plaintiff,<br><br> v.<br><br>**DisasterPreparer, LLC**<br>SERVE: Arthur Thomas Bradley<br>112 Zanca Turn<br>Yorktown, VA 23693,<br><br>and<br><br>**Arthur Thomas Bradley**<br>112 Zanca Turn<br>Yorktown, VA 23693,<br><br>     Defendants. | Case No. 2:19-cv-02109 |

## VERIFIED COMPLAINT

For its verified Complaint against Defendants DisasterPreparer, LLC ("DisasterPreparer") and Arthur Thomas Bradley ("Bradley") (hereinafter collectively "Defendants"), Plaintiff EMP Shield, LLC ("Plaintiff") states as follows:

### INTRODUCTION

1. By this action, Plaintiff seeks a temporary injunction, preliminary and permanent injunctive relief, damages, and other available remedies to redress Defendants' deceptive and unconscionable conduct in making false and defamatory statements, and further distributing material which knowingly contains false and defamatory statements, concerning Plaintiff and Plaintiff's products, specifically a product known as the "EMP Shield™."

2. Defendant DisasterPreparer, a business competitor of Plaintiff, is in the process of

developing a competitive product to the EMP Shield™. In attempts to deter the sales of the EMP Shield™ and promote its own future product, DisasterPreparer, and its member and/or employee Arthur Bradley, Ph.D., created and posted a misleading and defamatory video regarding the EMP Shield™ on YouTube.

3. Arthur Bradley additionally posted the video to his personal Facebook page. The video has been viewed more than 1,000 times.

4. DisasterPreparer and Arthur Bradley further have distributed written materials which make false and defamatory claims concerning the EMP Shield™.

5. The false and disparaging statements contained within the video and written materials have damaged and continue to be damaging to Plaintiff's reputation and business relationships.

6. Plaintiff needs immediate injunctive relief requiring Defendants to remove the video from YouTube, Facebook, and any other media in which the video has been published or is otherwise accessible, as well as remove the written materials from Defendants' online sharing folders, where it is currently accessible.

7. Immediate injunctive relief is further necessary to enjoin Defendants from otherwise making, posting, publishing, disseminating, distributing or communicating any of the false and disparaging statements depicted in the subject YouTube video and referenced report and/or review document, or otherwise relating to EMP Shield, LLC, the EMP Shield™ product, or any of EMP Shield, LLC's products.

## THE PARTIES

8. Plaintiff EMP Shield, LLC is a Kansas limited liability company, with its principal place of business in Coffey County, Kansas.

9. EMP Shield, LLC, at all relevant times, was and is engaged in business throughout the United States, primarily marketing, promoting, and selling its products online.

10. Defendant DisasterPreparer, LLC is a Virginia limited liability company, with its principal place of business in York County, Virginia.

11. Upon information and belief, DisasterPreparer does business throughout the United States, selling and promoting its products online.

12. Defendant Arthur Bradley is an individual residing in York County, Virginia.

13. Upon information and belief, Defendant Bradley is the managing member of DisasterPreparer, LLC.

## JURISDICTION AND VENUE

14. This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendants.

15. Plaintiff is a limited liability company formed under Kansas law with its principle place of business in Kansas.

16. DisasterPreparer is a limited liability company formed under Virginia law, and Bradley resides in Virginia. Plaintiff seeks injunctive relief, monetary damages, and declaratory relief all concerning an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

17. Venue is proper because a substantial part of the actions giving rise to this matter, including but not limited to Defendants' interference and damage to Plaintiff's reputation and business relationships, occurred where the false and defamatory statements were distributed, including Coffey County, Kansas, and Defendants are subject to personal jurisdiction in the District of Kansas because Defendants' actions can be fairly characterized as intended to

3

negatively affect Plaintiff's business in Kansas.

## FACTUAL BACKGROUND

18. Plaintiff incorporates by reference the foregoing paragraphs as if fully stated herein.

19. EMP Shield, LLC is a manufacturer and provider of detailed technical services regarding electrical surge protection.

20. In mid-2017, EMP Shield, LLC designed, developed, and manufactured a unique electrical surge protection system, known as the "EMP Shield™."

21. The EMP Shield™ is a very robust surge arrestor, and is marketed to be the world's first civilian whole home EMP (electromagnetic pulse) protection device.

22. According to a recent U.S. Department of Homeland Security (DHS) publication, extreme electromagnetic incidents caused by an intentional EMP attack or a naturally occurring geomagnetic disturbance (GMD, also referred to as "space weather") could damage significant portions of the Nation's critical infrastructure, including the electrical grid, communications equipment, water and wastewater systems, and transportation modes. *See* U.S. Department of Homeland Security, *Strategy for Protecting and Preparing the Homeland Against Threats of EMP and GMD* (October 9, 2018), https://www.dhs.gov/sites/default/files/publications/18_1009_EMP_GMD_Strategy-Non-Embargoed.pdf

23. The EMP Shield™ is designed to exceed the requirements of MIL-STD-188-125-1, which is a military standard approved for use by all Department of Defense Departments and Agencies, and "establishes minimum requirements and design objectives for high-altitude electromagnetic pulse (HEMP) hardening of fixed ground-based facilities…" MIL-STD-188-125-1 (July 17, 1998).

24. In November of 2017, the EMP Shield™ underwent testing by an independent third-party Department of Defense approved testing laboratory, Keystone Compliance, LLC.

25. KeyStone Compliance, LLC tested the EMP Shield™ against MIL-STD-188-125-1 (High-Altitude Electromagnetic Pulse (HEMP) Protection For Ground-Based $C^4I$ Facilities Performing Critical, Time-Urgent Missions Part 1 Fixed Facilities).

26. The Keystone Compliance, LLC testing revealed that the EMP Shield™ was compliant with MIL-STD-188-125-1.

27. On or about January 9, 2018, EMP Shield, LLC, filed for a provisional patent with the U.S. Patent and Trademark Office, Application Number: 62615159, for its "System and Method for Suppressing Electromagnetic pulse-induced Electrical System Surges."

28. On or about January 7, 2019, an application to convert the provisional patent to a full patent was filed with the U.S. Patent and Trademark Office, Application Number: 16240897.

29. In early 2019, Arthur Bradley, Ph.D., a self-proclaimed disaster preparer, began promoting and distributing materials – both individually and through the limited liability company DisasterPreparer which were critical of the EMP Shield™.

30. The materials distributed by Defendants contain false and disparaging statements concerning the EMP Shield™ and EMP Shield, LLC.

31. Dr. Bradley, an alleged competitor of EMP Shield, LLC, claims to be developing his own whole-house surge protection device, the "EMPStorm," which he markets and promotes through DisasterPreparer, LLC.

32. Unlike the EMP Shield™ which is on the market, the "EMPStorm" is still in development and prototype stage.

33. The EMPStorm has not undergone independent third-party testing.

5

34. The EMPStorm is only available for pre-order to the public.

35. In attempts to deter the sales of the EMP Shield™ and promote his own product, on or about February 20, 2019, Dr. Bradley sent a promotional DisasterPreparer e-mail to DisasterPreparer Subscribers, which included a link to a video posted on YouTube, by YouTube user "Disasterprepper," which claims to contain a comparison of the "EMPStorm" to the EMP Shield™ (the "Video").

36. YouTube user "Disasterprepper" has approximately 9,800 YouTube subscribers. The YouTube video has been viewed over 875 times, according to the counter on that site.

37. The Video was also posted on Dr. Bradley's Facebook page on February 22, 2019. The Facebook video has been viewed over 160 times, according to the counter on that site.

38. The EMP Shield™ will protect a house against a 1,000 volt surge.

39. This 1,000 volt surge was part of the military specification testing referenced above.

40. In the Video, Dr. Bradley makes false, inflammatory, and disparaging claims about the EMP Shield™ product, including the false claims that the EMP Shield™ does not protect against a 1,000 volt surge.

41. In replying to a comment posted on the YouTube video, on February 21, 2019, user "Disasterprepper" whom is believed to be Dr. Bradley, posted a link to an online drive containing a document which Dr. Bradley claims is a review (or report) of the EMP Shield™ conducted by a third-party company (the "Review").

42. Dr. Bradley is the YouTube user "Disasterprepper" who posted the link described above, therefore publishing it.

43. The Review contains many false and malicious statements regarding the EMP Shield™, including, but not limited to:

  a. EMP Shield, LLC engaged in "manipulative marketing methods, selective testing, [and] concealed packaging methods ... [and] they are knowingly defrauding families for $100K+/month in profits."

  b. "... EMP Shield was purposely made to be the cheapest/worst lightning arrestor;" and,

  c. "EMP Shield cannot protect against E1 (unless you live in a faraday cage) or E3 or Solar Flares."

44. Dr. Bradley and/or DisasterPreparer began distributing this Review prior to February 20, 2019.

45. As part of EMP Shield, LLC's planned marketing campaign to increase sales within the company to civilian customers, EMP Shield, LLC scheduled a Question & Answer show with YouTube user "Leak Project" concerning the EMP Shield™, with the aid of "Oppenheimer Ranch Project" (another YouTube user), which was scheduled to occur in the form of a live show on January 25, 2019. The show was announced the week prior.

46. YouTube user the "Leak Project" has over 321,500 subscribers. YouTube user "Oppenheimer Ranch Project" has over 46,600 subscribers.

47. Both "Oppenheimer Ranch Project" and the "Leak Project" had become EMP Shield, LLC affiliates, meaning each entity received 15% of each EMP Shield™ sale rendered when the purchaser used the entity's unique discount code.

48. On January 25, 2019, the day of the scheduled live Question & Answer show on the "Leak Project," "Oppenheimer Ranch Project" sent an electronic communication to EMP

7

Shield, LLC via Facebook message, indicating it cancelled the live show on the "Leak Project," due to "eye opening revelations about EMP Shield" from Dr. Bradley. The communication further contained an electronic link to the same report of the EMP Shield™ distributed by Dr. Bradley discussed above, the Review.

49. EMP Shield, LLC, predicts that this live Question & Answer show would have generated sales between 100-600 units, with a total of 1,000-2,000 units sold over a twelve-month partnership with these two entities. These sales numbers are projections based upon the influence and subscriber size of the "Leak Project" and "Oppenheimer Ranch Project."

50. During the "Mother Earth News Fair" in Belton, Texas, on February 16 and 17, 2019, two men approached the EMP Shield, LLC sales booth and confronted EMP Shield, LLC employees claiming, *inter alia*, 1) that EMP Shield, LLC was a "fraud," 2) that the EMP Shield™ product "would not work," and 3) that Dr. Arthur Bradley had tested the product and it did not work.

51. One of these men claimed to work with Dr. Bradley, and the other referred to an article concerning the EMP Shield™ distributed by Dr. Bradley discussed above, and even showed a copy of the Review to EMP Shield, LLC employees.

52. Upon information and belief, Plaintiff alleges that Defendants made the foregoing false statements and distributed materials containing further false statements with the specific intent to injure Plaintiff, Plaintiff's reputation, both current and future business relationships, and future business opportunities, and without any reasonable basis for believing the statements to be true.

53. As a result of Defendants' wrongful actions, Plaintiff has suffered irreparable damage without an adequate remedy at law, and further, as a result of Defendants' wrongful

actions, will continue to be damaged.

## COUNT ONE
### DEFAMATION

54. Plaintiff restates the allegations contained in the foregoing Paragraphs as if fully restated herein.

55. On February 20, 2019, Defendants published a video to YouTube, wherein Dr. Bradley makes false, inflammatory, and disparaging claims about the EMP Shield™ product, including the false claims that the EMP Shield™ does not protect against a 1,000 Volt surge.

56. On February 20, 2019, Defendants distributed a promotional e-mail to DisasterPreparer subscribers, which included a link to the YouTube video.

57. On February 21, 2019, Defendants distributed a document which Dr. Bradley claims is a review (or report) of the EMP Shield™ conducted by a third-party company by posting a link to the document in the comments to the YouTube video. Like the YouTube video, this document contains many false and malicious statements regarding the EMP Shield™, described above.

58. Upon information and belief, Defendants distributed this review and/or report document sometime in January 2019.

59. Defendants made these false statements and published the material containing false statements knowing the falsity thereof or without using reasonable care to determine the truth or falsity thereof.

60. Defendants made these aforementioned statements with malice, and with the intent to injure Plaintiff's good name and reputation and to interfere with Plaintiff's business opportunities.

61. Defendants sought to gain an unfair business advantage by publishing the untrue

statements about the EMP Shield™ product and EMP Shield, LLC.

62. Defendants' conduct has caused and continues to cause severe and irreparable injury to EMP Shield, LLC's revenue, customer relationships, and competitive position in the market place.

63. Plaintiff's remedy at law for Defendants' conduct is inadequate.

64. To prevent Plaintiff from suffering further harm, Plaintiff requires an order from this Court restraining and enjoining Defendants from making, posting, publishing, disseminating, distributing or communicating any of the false and disparaging statements depicted in the subject YouTube video and referenced report and/or review document, or otherwise relating to EMP Shield, LLC, the EMP Shield™ product, or any of EMP Shield, LLC's products.

## COUNT TWO
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

65. Plaintiff restates the allegations contained in the foregoing as if fully restated herein.

66. Defendants knew that Plaintiff had an agreement with "Oppenheimer Ranch Project" and the "Leak Project" to conduct the marketing live Question & Answer show.

67. Defendants intentionally interfered with Plaintiff's agreement with "Oppenheimer Ranch Project" and the "Leak Project" by distributing the YouTube video and written materials to "Oppenheimer Ranch Project."

68. Defendants intentionally caused "Oppenheimer Ranch Project" and the "Leak Project" to cancel their agreement with Plaintiff

69. Defendants' intentional interference with Plaintiff's business relationships was done without privilege or justification.

70. As a direct and proximate result of Defendants' tortious interference, Plaintiff has

been damaged in an amount believed to be in excess of $75,000.00, to be proven at trial.

## COUNT THREE
### INJUNCTIVE RELIEF

71. Plaintiff restates the allegations contained in the foregoing Paragraphs as if fully restated herein.

72. Plaintiff has been and will continue to be irreparably injured as a direct result of Defendants' conduct. Without limitation, Plaintiff is suffering irreparable harm from the very public misappropriation of its product, the EMP Shield™, and from the negative effect of that misappropriation on Plaintiff's ability to re-establish contact with affiliates "Oppenheimer Ranch Project" and the "Leak Project," representing predicted sales of 1,000-2,000 units.

73. In this industry, customers who are lost in one year typically are lost for many years, if not forever. The lost future revenue streams, lost word of mouth, lost goodwill, and other consequences can never be fully measured, or compensated by monetary damages.

74. Plaintiff has no adequate remedy at law to protect its substantial business and proprietary rights, and the damage from Defendants' activities is substantial, continuing, and not capable of ascertainment at this time.

75. Moreover, Plaintiff's need for relief is immediate because Defendants' violations are ongoing and occurring during this season.

76. Without the requested relief, Defendants will continue to disseminate the aforementioned false and disparaging statements, resulting in additional, irreparable harm to Plaintiff.

77. Because Plaintiff has no adequate remedy at law, Plaintiff is entitled to a preliminary injunction, and a permanent injunction barring Defendants from making, posting, publishing, disseminating, distributing or communicating any of the false and disparaging

statements depicted in the subject YouTube video and referenced report and/or review document, or otherwise relating to EMP Shield, LLC, the EMP Shield™ product, or any of EMP Shield, LLC's products.

**WHEREFORE**, Plaintiff demands judgment as follows:

a. a preliminary injunction during the pendency of this action and a permanent injunction thereafter restraining and enjoining Defendants from making, posting, publishing, disseminating, distributing or communicating any of the false and disparaging statements depicted in the subject YouTube video and referenced report and/or review document, or otherwise relating to EMP Shield, LLC, the EMP Shield™ product, or any of EMP Shield, LLC's products;

b. an award for damages in an amount to be determined at trial and believed to be in excess of $75,000.00;

c. an award for punitive and/or exemplary damages;

d. an award for Plaintiff's costs expended herein; and

e. any other relief at law or in equity this Court deems proper.

Respectfully Submitted:

BAKER STERCHI COWDEN & RICE, LLC

/s/ James R Jarrow
James R. Jarrow                KS# 14287
Suzanne E. Billam              KS# 26328
BAKER STERCHI COWDEN & RICE, L.L.C.
51 Corporate Woods
9393 West 110th Street, Suite 500
Overland Park, KS 66210
Tel:   (816) 471-2121
Fax:   (816) 472-0288

Email: Jarrow@bscr-law.com
sbillam@bscr-law.com

*Attorneys for Plaintiff EMP Shield, LLC*

## VERIFICATION

STATE OF KANSAS           )
                          )
COUNTY OF _____   )

I, Peter Keegan, having first been duly sworn, state that I am General Manager for EMP Shield, LLC, that I have read the foregoing Verified Complaint, and that I have personal knowledge of the facts alleged therein. On behalf of Plaintiff, I state that the allegations and statements contained therein are true and correct to the best of my knowledge, information and belief.

_____
Peter Keegan

Sworn before me and subscribed in my presence this 27th day of February, 2019.

CARIE S. COLLINS
Notary Public - State of Kansas
My Appt. Expires 2-17-22

_____
Notary Public

13